[Civ. No. 30878.   Second Dist., Div. One.   May 9, 1967.]

SOUTH COAST COMPANY, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

R. D. Sweeney and John L. Mace for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Neal J. Gobar, Robert A. Feldman and Mario A. Roberti, Deputy Attorneys General, for Defendant and Respondent.

FOURT, J.—South Coast Company (hereinafter called South Coast) seeks to obtain a refund of 1953 income taxes which it contends were paid erroneously under the Bank and Corporation Tax Law of the State of California. South Coast appeals a judgment in favor of the Franchise Tax Board of the State of California after the denial of its claim for refund was confirmed by the State Board of Equalization.

The findings of fact, which are not in dispute, disclose that South Coast operated a shipyard for the construction, alteration and repair of seagoing vessels. It was the business custom and practice of South Coast, which submitted tax returns on the accrual system, to report its income on contracts to be performed over a period of more than one year upon a percentage of completion basis.

South Coast on December 18, 1951, entered into a contract with the United States Government under which it engaged to construct six motor minesweepers to be delivered one each month commencing with July 1, 1953, the final delivery to be made on December 1, 1953. South Coast was delayed in completing performance under the subject contract and although the work was 88.61 percent completed by the end of 1953, the first vessel was not delivered until February 11, 1954, and the last vessel was finally delivered on December 10, 1954. The government's failure to make timely delivery to South Coast of certain material it had agreed to furnish caused the delay. Under the terms of article 23(a) of the contract South Coast was entitled, under such circumstances, and upon written request to "an equitable adjustment . . . in delivery or performance dates, or price, or both, . . ." However, the amount which South Coast might claim or be paid by the government with respect to this loss could not be determined with accuracy until 1955, after all six vessels had been completed and delivered.

.Article 13 of the contract allowed South Coast, in addition to the above mentioned claim for losses due to delay, to request an upward adjustment in its contract price should it be required to pay an hourly wage rate in excess of $1.89 with the limitation that no upward price adjustment would be allowed should it increase South Coast's profit above that specified in the contract. Article 13 also required South Coast to submit, within 60 days after completion of its performance under the contract, a written request for such upward price adjustment. Before the end of 1953 general wage increases in the shipbuilding industry raised the wage scale above the $1.89 per hour average recited in the contract; South Coast established and paid the increased wage rates. South Coast deducted in its 1953 California tax return the increased labor expense of $137,284.21 thus incurred and reported in the same return an estimated gross profit from the contract of $169,351.48, taking into account estimated earned labor escalation income of $137,284.21 on which it paid $5,491.37 tax. The trial court found that South Coast suffered substantial losses during 1953 which it was entitled to recover from the government.

After the contract was completed, South Coast on March 28, 1955, filed its claim with the government for $195,791.55 total increased labor charges under article 13 and on April 1, 1955, filed its claim with the government for an upward adjustment of $581,867.42 in the contract price due to losses occasioned by the government's delay in furnishing the specified materials under article 23. South Coast filed the former claim in order to be protected in the event the latter claim was denied and not allowed by the government. A hearing was set on the claim under article 23 and following that hearing South Coast accepted $211,000 in full settlement and in compromise of all claims. When the government on March 29, 1956, acknowledged this sum as the "equitable adjustment" to which South Coast was entitled under its contract, South Coast determined its final profit thereunder to be $441,630.20. The $211,000 was paid to South Coast which reported this income on its 1956 California tax return, thus accounting for the total profit realized under the contract.

· South Coast contends that it is entitled to a refund of $5,491.37 because it erred in treating the $137,284.21 as income in 1953 and it asserts in support of this position the principle that when a taxpayer maintains records on an accrual basis, it is incorrect for him to reflect any sum as

accrued income for tax purposes unless the right to receive it is a fixed, determined and enforceable right not then subject to contingencies or conditions. ██ "Since the suit was one to recover a tax erroneously exacted, the burden was on the . . . [petitioner], . . . [appellant] here, to prove the facts establishing the invalidity of the tax." (*United States* v. *Anderson,* 269 U.S. 422, 443 [70 L.Ed. 347, 352, 46 S.Ct. 131] ; *Pacific Fruit Express Co.* v. *McColgan,* 67 Cal.App.2d 93, 96 [153 P.2d 607].) South Coast, which failed to sustain its burden of proof, errs now in its contention that certain findings are not supported by the evidence and that, in any event, these do not support the judgment.

While South Coast did not, during 1953, know what effect the wage increase might have or whether an appropriate adjustment therefor would render its profit higher than that estimated in the agreement, it nonetheless reflected that total additional expenditure as income on the theory that it then was entitled to receive a commensurate adjustment in the contract price. Thereafter, in 1955, South Coast filed separate claims to recover the increased labor costs and the losses occasioned by the government's delay in furnishing materials. South Coast, by the terms of article 13, might have been prohibited from prosecuting its claim for the wage increase adjustment because the amount recovered in settlement so increased its receipts from the contract that the profit realized exceeded the profit ceiling contained in the contract. Ultimately, however, the parties entered into an agreement in complete settlement and compromise of any and all claims for the sum of $211,000. We are not prepared, under the circumstances, to assume that the right to reimbursement for labor escalation was forfeited, nor do we consider that issue necessarily relevant to the determination of the correctness of appellant's income statement in the earlier year.

██ Clearly by the end of 1953 South Coast had a fixed, definite and certain right to $137,284.21. In reporting as labor escalation income the increased labor cost incurred to that time, which it had a right to charge to the government, South Coast utilized an accepted method of tax accounting and reporting; it took a corresponding tax deduction because the accrued income was attributable to labor expenses. Appellant's conduct following execution of the contract, which may be looked to in interpreting its terms (*Collins* v. *Home Sav. & Loan Assn.,* 205 Cal.App.2d 86, 99-100 [22 Cal.Rptr. 817]), tends to establish South Coast's reasonable belief that pursu-

ant to that agreement it enjoyed a fixed, definite and certain right to be reimbursed for increased labor costs. Its potential profit on the contract, estimated at $169,351.48 during 1953 when the contract was 88 percent completed, then exceeded neither the estimated profit of $324,054 specified in the contract, nor 88 percent of that figure. South Coast's right to receive at least $137,284.21 accrued during 1953 and, construing the terms of article 13 in accord with principles of ordinary language and grammar (*Turner* v. *Metropolitan Life Ins. Co.*, 56 Cal.App.2d 862, 865 [133 P.2d 859]), we find that the corresponding duty of the federal government to pay that minimum sum was thereby rendered absolute.

The trial court found that when South Coast accepted the $211,000 in settlement of all claims the receipt thereof constituted payment of the previously accrued labor costs. The settlement clearly and unequivocally states that payment of that sum by the federal government constituted satisfaction of all South Coast's claims without allocation and excepting only those for retained reserves or change order adjustments. There is no support in the record for South Coast's claim that payment of increased labor costs increased its ultimate profit above the ceiling. Article 13 expressly prohibits this result, and we must infer from the trial court's determination that the fulfillment of some other contractual obligation was the source of this increase. (*Alexander* v. *McDonald,* 86 Cal.App. 2d 670, 671 [195 P.2d 24].)

▉ Income is to be computed for tax purposes under the method of accounting by which the taxpayer regularly reflects its business transactions and once the taxpayer has elected a permissible form of accounting, it is bound thereby. (Rev. & Tax. Code, § 24651, subds. (a) and (e).) "It is the essence of any system of taxation that it should produce revenue [which is] ascertainable, . . . at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. . . ." (*Burnet* v. *Sanford & Brooks Co.,* 282 U.S. 359, 365 [75 L.Ed. 383, 387, 51 S.Ct. 150].)

▉ South Coast disputes the trial court's finding that when it initially reported the labor increase as accrued income this was a "proper, sound and recognized tax reporting method." We are persuaded that this reporting constituted a reasonable prospective determination on the part of South Coast as such determinations are compelled by the accrual

method of accounting. We are, moreover, constrained to the conclusion that appellant's earlier decision is binding since the vicissitudes of accrual accounting demand that a taxpayer's decision to consider an item as accured income must be subsequently sustained if it becomes apparent that on any theory it could be retrospectively supported.

Appellant is not at liberty to modify retroactively its election to consider the labor increase as income accrued in 1953 and thus by hindsight amend its return. The percentage of completion method utilized by South Coast and authorized by the Franchise Tax Board (Rev. & Tax. Code, § 24673) has frequently been sustained as clearly reflecting long term contract income. Concerning retroactive amendment of such returns, however, the Ninth Circuit in a case wherein plaintiffs claimed that partnership income had been overstated by that method observed:

"The conflict in this case revolves around the question of whether a taxpayer who uses the percentage of completion method of computing net income on long term contracts may, after computing the percentage of completion by one method, later change such percentage by use of a different method to show that less income was actually earned. . . .

"The fallacy involved in appellants' contention is that such a procedure would allow a taxpayer to wait until the termination of a long term contract and then evaluate the method which would be most favorable to him over the long term. He could affirm the method originally employed or change to another method of computing the percentage of completion depending upon which would be to his financial advantage over the term of the contract. Such a course of conduct is repugnant to our system of taxation.

". . . [T]he onus ought properly to be on the taxpayer to make sure that the method of estimating percentage of completion is used correctly as the job progresses." (*Lord* v. *United States*, 296 F.2d 333, 334-335.)

The accrual method is purely an economic and bookkeeping procedure (*United States* v. *Anderson, supra,* 269 U.S. 422, 441 [70 L.Ed. 347, 351, 46 S.Ct. 131]) whereby it is the right to receive and not the actual receipt of an income item which determines the propriety of its inclusion in income for tax purposes. "When the right to receive an amount becomes fixed, the right accrues." (*Spring City Foundry Co.* v. *Commissioner of Int. Rev.,* 292 U.S. 182, 184-185 [78 L.Ed. 1200, 1203, 54 S.Ct. 644].) Appellant's observation that no

one could ascertain in 1953 what its ultimate profit would be is without relevance since taxpayers on a percentage completion accrual basis are compelled to estimate the results in anticipation of completion and final acceptance, assuming a profit, and once such income is reported, the taxpayer is bound unless he can show that the basis utilized did not clearly reflect income. (*Daley* v. *United States,* 243 F.2d 466, 471.)

Even if we are to assume that South Coast's right to the labor increase could be and was ultimately cut off, South Coast was nonetheless, at the end of 1953, entitled to a compensating income increment measured by at least that amount because the termination of its right to receive the $137,284.21 could come about only if that sum were paid under some clause other than the labor escalation clause. Ultimately, and no matter how the income might be designated, South Coast held an enforceable right to receive reimbursement of at least $137,284.21 accrued in 1953 and this right was then taxable. (*Spring City Foundry Co.* v. *Commissioner of Int. Rev., supra,* 292 U.S. 182, 184 [78 L.Ed. 1200, 1203, 54 S.Ct. 644].)

The taxpayer bears the initial responsibility to be sure he correctly estimates accrued income and, in the event of error, the ultimate burden to prove that the inaccuracy of his determination was such that on no applicable theory did he clearly reflect his income thereby. (*Lord* v. *United States, supra,* 296 F.2d 333, 335.) This burden South Coast has failed to sustain.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 2, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1967.