[Civ. No. 68191. Second Dist., Div. Four. Jan. 31, 1984.]

ROBERT H. BORCHERS et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD et al., Defendants and Respondents.

## COUNSEL

Hickey, Neuland, Pardes & Colletta and William P. Hickey for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Patti S. Kitching, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

SAETA, J.*—Appellants Robert H. and Josephine Borchers (taxpayers) timely appeal from a judgment in favor of respondents Franchise Tax Board

*Assigned by the Chairperson of the Judicial Council.

and State Board of Equalization (collectively Board). Taxpayers had sued for a refund of income taxes for the year 1971 on the basis that annuity payments received by them should not have been included in their income.

The crux of the case is the proper interpretation of Revenue and Taxation Code section 17596 (section 17596). While this section has been construed by administrative boards, it has not been the subject of appellate consideration before. It reads as follows: "When the status of a taxpayer changes from resident to nonresident, or from nonresident to resident, there shall be included in determining income from sources within or without this State, as the case may be, income and deductions accrued prior to the change of status even though not otherwise includible in respect of the period prior to such change, but the taxation or deduction of items accrued prior to the change of status shall not be affected by the change."

The case was tried on stipulated facts. These show that taxpayer, Mr. Borchers, worked in Illinois for many years for Armour and Company, retiring in 1966. Under Armour's pension plan, taxpayer had several options for payment, including taking a lump sum of $610,263.46. He chose a monthly pension benefit with a survivor annuity payable to his wife if he predeceased her. Taxpayers began to collect the monthly annuity and then moved to California in 1971, the tax year in question. In their 1971 return taxpayers included the annuity income in their gross income but in 1974 filed a claim for refund. Their claim was disallowed by the Franchise Tax Board and the disallowance was ultimately upheld by the State Board of Equalization.

■ Taxpayers argue that their pension rights and payments "accrued" in Illinois prior to their move to California, and, therefore, California, under section 17596, may not tax them. Board argues that nothing accrued in Illinois; rather, due to the requirement of survivability of taxpayers, there is no accruing until each payment is received and that occurs once a month in California. The resolution of this dispute turns on the use of the word "accrued"[1] in the statute.

Section 17596 does not define its terms nor does the Revenue and Taxation Code do so. "Accrued" is an accounting term. The Court of Appeal in *South Coast Co.* v. *Franchise Tax Bd.* (1967) 250 Cal.App.2d 822, 827

---

[1]While it may seem anomalous to talk of accrual in the context of a cash taxpayer, the regulations to section 17596 import the accrual concept where several state residencies are involved. California Administrative Code, title 18, section 17596 states: "When . . . a nonresident becomes a resident, the taxability of income . . . accrued prior to the change in residency status will not be affected by the change, even though the taxpayer may be on the cash receipts . . . accounting method."

[58 Cal.Rptr. 747], adopts a definition from the United States Supreme Court: "'When the right to receive an amount becomes fixed, the right accrues'" (quoting *Spring City Foundry Co.* v. *Commissioner of Int. Rev.* (1934) 292 U.S. 182, 184-185 [78 L.Ed. 1200, 1203, 54 S.Ct. 644]). The court in *South Coast* lays stress on the words "fixed, definite and certain right" to money. (*Id.,* at p. 825.) Board's regulations in effect at the time of the events in our case provided for inclusion of income under accrual accounting "(1) when all the events have occurred which fix the right to receive such income and (2) the amount thereof can be determined with reasonable accuracy." (Cal. Admin. Code, tit. 18, § 17571, subd. (a).)

Measured by these standards, taxpayers here did not accrue their pension payments in Illinois in 1966. No definite or certain amount was fixed in 1966 as taxpayers chose a survivor annuity option rather than the lump sum amount. Thus, the amount they will ultimately receive from the pension depends on how long they live, a matter not yet known. It is crucial to note here that their plan does not provide for any benefits to be paid over to the estate of the survivor or to any other person.

Our view is buttressed by a line of decisions of the State Board of Equalization. Contemporary administrative constructions of statutes are entitled to great weight. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672].) *Appeal of Henry D. and Rae Zlotnick,* Cal. St. Bd. of Equal., May 6, 1971, CCH, Cal. Tax Reporter, ¶ 204-518, is closest in point. Zlotnick received two government pensions while a resident of New York and later moved to California. As in our case, he chose a monthly annuity with a survivorship provision for the benefit of his wife. The Board held that the survivorship provision made the payments received in California in 1966 taxable by California. The court differentiated the $14,683.88 which Zlotnick had contributed to one of his pensions. That amount would not have been taxable by California under section 17596 because that amount was returnable to the Zlotnicks *or their estates* if they had both died before the annuity payments equaled that sum. Thus the $14,683.88 was a fixed and definite sum meeting the definition of "accrued" of section 17596. *Zlotnick* relied on *Appeal of Edward B. and Marion R. Flaherty,* Cal. St. Bd. of Equal., Jan. 6, 1969, CCH, Cal. Tax Reporter, ¶ 204-011 and *Appeal of Lee J. and Charlotte Wojack,* Cal. St. Bd. of Equal., March 22, 1971, CCH, Cal. Tax Reporter, ¶ 204-502. To the same effect is *Appeal of Ellington,* Cal. St. Bd. of Equal., Oct. 17, 1973, CCH, Cal. Tax Reporter, ¶ 204-989.

Taxpayers stress language in these Board opinions which show that the taxpayers there involved had no lump sum option whereas they, the Borchers, did have such an option. A careful reading of those opinions, however,

shows that the lump sum feature was not crucial to those decisions. Rather, the survivability feature, creating an uncertainty as to the final, total amount of the pensions, caused the pension not to accrue. *Zlotnick* is the closest opinion where a lump sum was in issue in its treatment of the $14,683.88 contribution made by the pensioner. But as has been seen, that money was payable in all events whereas in our case, once taxpayers chose the survivorship option, the lump sum possibility ended.

Taxpayers rely on examples 2 and 4 of the regulation to section 17596.[2] However, in these two examples the obligation to the taxpayer was fixed in amount and in time of payment.

Taxpayers further argue that they could have taken the lump sum in 1966 and purchased another annuity and then not be taxed in California. This argument is unavailing for two reasons: (1) they did not do this but, instead, chose a different pension option with different consequences, and (2) there is no reason to believe that if their "second" annuity had survivorship provisions and did not call for a fixed sum to be paid in all events, that the annuity payments received in California would not be taxed as received.

The judgment is affirmed.

Kingsley, Acting P. J., and Amerian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 25, 1984.

---

[2]Example 2 of section 17596, states: "X was a resident of New York and a cash basis taxpayer. He performed services in New York for which he earned $2,000. He then moved to California and became a resident of this state on November 1, 1975. He received from his New York employer one $1,000 payment on December 1, 1975, and another $1,000 payment on January 1, 1976.

"The payments are not subject to California tax since they are not from a California source and the right to receive them accrued prior to the change in X's residency status."

Example 4 of section 17596, states: "X was a resident of New York and a cash basis taxpayer. On July 1, 1975, he sold a parcel of real property located in Nevada for $60,000. The buyer paid $10,000 down and agreed to pay the remainder in two equal installments. X elected to report the income from the sale using the installment method. X moved to California and became a resident of this state on October 1, 1975.

"He received one $25,000 installment payment on December 1, 1975, and the other $25,000 installment payment on June 1, 1976.

"None of the payments are subject to California tax, since they were not derived from a California source, and the right to receive them accrued before the change in X's residency status." (Cal. Admin. Code, tit. 18, § 17596.)