[No. A102401. First Dist., Div. One. Apr. 28, 2004.]

THOMAS H. PAINE et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

Bill Lockye,r Attorney General, and Marguerite C. Stricklin, Deputy Attorney General, for Defendant and Appellant.

Lempert & Winslow and Edward Winslow Layman for Plaintiffs and Respondents.

OPINION

**STEIN, J.**—The Franchise Tax Board (Board) appeals a judgment requiring it to refund the sum of $111,115 plus interest to Thomas H. Paine and Teresa A. Norton (plaintiffs) for the 1997, 1998, 1999, and 2000 income years. The refund is for taxes paid on amounts plaintiffs received after they retired or withdrew from Hewitt Associates, a business consulting partnership, and became California residents. The court granted the refund based upon its application of former Revenue and Taxation Code section 17554.[1] We shall find that the court incorrectly applied former section 17554, and reverse the judgment.

## FACTS[2]

Thomas H. Paine was a partner in Hewitt Associates for 31 years. He retired on December 31, 1989. Teresa A. Norton was a partner in Hewitt Associates for approximately eight years before she withdrew from the partnership on December 31, 1985. Under the terms of the Hewitt Associates partnership agreement, both plaintiffs earned vested deferred compensation paid over a 10-year period beginning on retirement or withdrawal from the partnership.

[1] Except as otherwise indicated, all subsequent statutory references are to the Revenue and Taxation Code.

[2] This summary is based largely upon the stipulated facts that were set forth as undisputed facts in support of a prior motion for summary judgment, and which were adopted in the court's statement of decision.

The deferred compensation payable to Paine was based upon (1) partnership earnings in years prior to retirement, (2) his capital account and the difference between his capital account on an accrual basis and on a cash basis, and (3) interest on the unpaid capital account. The compensation payable to Norton consisted of (1) repayment of 50 percent of her capital account and (2) the difference between her capital account on an accrual basis and on a cash basis.

Plaintiffs became California residents in 1990. Hewitt Associates filed tax returns based on a fiscal year ending on September 30, on a cash accounting basis, for the years 1996, 1997, 1998, and 1999, accounting for the deferred compensation as paid in each of these years.[3] The deferred compensation Hewitt Associates reported as paid in the years 1996–1999 does not include any California source income.

Plaintiffs also filed timely joint California tax returns for those same years. They paid all tax due, including taxes on installments of the deferred compensation from Hewitt Associates, as received. They then filed amended personal income tax forms for each of these years, claiming a refund based upon exclusion of the deferred compensation.

After their administrative claim for a refund was denied, plaintiffs filed their complaint for a refund of personal income tax. The trial was based on stipulated facts and admission of documents. On January 23, 2003, the trial court issued its tentative decision, which became its statement of decision. The court held that former section 17554 prevented cash- and accrual-basis taxpayers who change residency from being taxed differently. As applied to the facts, the court reasoned that if Hewitt Associates had accounted on an accrual basis, instead of accounting for the deferred compensation in each of the years paid, its liability for the entire amount of deferred compensation would have accrued and been deducted in 1985 and 1989, the years in which plaintiffs retired or withdrew from the partnership, before plaintiffs became California residents. In that event, plaintiffs would have had to include the entire amount as income in those respective years, instead of in the years Hewitt Associates actually accounted for it as paid, and plaintiffs would not have had to pay any California taxes in the years they received these payments after becoming California residents. The court concluded that former section 17554 therefore precluded the State of California from taxing the deferred compensation payments plaintiffs received after they became California residents, and entered judgment for a refund of the taxes paid. The Board filed a timely notice of appeal.

---

[3] The parties have settled a claim for refund based upon 1990 returns.

## ANALYSIS

Plaintiffs' claim for a refund turns on the application and effect of section 17554, a statute concerning the treatment of a taxpayer who changes residency that was repealed effective October 14, 2001. (Stats. 2001, ch. 920, § 15.) Before addressing whether, and how, section 17554 should be applied to the facts of this case, we review the applicable principles of taxation concerning partners and partnerships, which will demonstrate that the payments plaintiffs received from Hewitt Associates were otherwise taxable by the State of California for the years in question

■ California personal income tax is imposed upon the entire taxable income of a resident of California, regardless of its source. (§ 17041, subds. (a) and (i)(1)(A).) The policy behind this provision is to ensure that individuals who are present in the state, and receiving the benefits and protections of its laws, contribute to it by paying taxes on all income regardless of its source. It was undisputed that plaintiffs became residents of California in 1990, and were residents of California when they received payments from Hewitt Associates in the 1997, 1998, 1999, and 2000 income years. This income is taxable despite its non-California source, because plaintiffs were residents of this state in each of these years.

Setting aside the question of the effect of the change in their residency in 1990, under both California and federal tax laws, plaintiffs were required to include the payments they received from Hewitt as income for the taxable years 1997, 1998, 1999, and 2000. The deferred compensation payments at issue are payments made by a partnership to a retired or withdrawing partner. Section 17851 specifies that, with exceptions not relevant here, the provisions of Internal Revenue Code section 701 et seq., applicable to partners and partnerships, shall also apply to California taxation of partnerships and partners. The taxation of partners and partnerships involves a blend of an aggregate and an entity approach to accounting. A partnership, for most purposes, is not treated as a separate entity and is not subject to income tax. (Int.Rev. Code, § 701.) Instead, in determining personal income tax, a partner reports his or her "distributive share" of partnership income, gain, loss, deduction, and credit in accordance with the terms of the partnership agreement. (Int.Rev. Code, § 702(a).)

■ Under the applicable federal tax law, incorporated into state law by section 17851, payments made to a retired partner are either distributive shares or guaranteed payments.[4] (Int.Rev. Code, § 736; 26 C.F.R. 1.736-1(a)(1)(2003).) The parties agree that the payments made to plaintiffs by

---

[4] The primary difference between the two is that a "guaranteed payment" is (1) treated as ordinary income for purposes of Internal Revenue Code section 61(a), whereas most other distributions to partners are treated as capital gain; and (2) unlike other distributions to

Hewitt Associates were guaranteed payments. A partner, retired or not, must include a guaranteed payment as "ordinary income for his taxable year within or with which ends the partnership taxable year in which the partnership deducted such payments as paid or accrued under its method of accounting." (26 C.F.R. § 1.707-1(c) (2003); see also 26 C.F.R. § 1.706-1(a) (2003); Int.Rev. Code, §§ 706(a), 707(c).) Hewitt Associates reported on a cash method of accounting under which a deduction is allowed when an item is paid. (26 C.F.R. 1.461-1(a)(1) (2003).) With respect to the timing of reporting income derived from the partnership, *the partnership* elects the method of accounting, and regardless of the accounting method a partner has chosen for nonpartnership income tax purposes, all partners are bound by that election. (26 C.F.R. 1.703-1(b)(1) (2003).) Therefore, plaintiffs were required to, and did, report as income the guaranteed payments that Hewitt Associates accounted for as paid in each of the taxable years that is the subject of their claim for a refund.

The basis for the claimed refund is the application of the recently repealed section 17554 to the guaranteed payments plaintiffs received from Hewitt Associates after they changed their residency to the State of California. Section 17554 provided: "When the status of a taxpayer changes from resident to nonresident, or from nonresident to resident, there shall be included in determining income from sources within or without this state . . . income and deductions accrued prior to the change of status even though not otherwise includable in respect of the period prior to that change, but the taxation or deduction of items accrued prior to the change of status shall not be affected by the change." In *Appeal of Money* (Dec. 13, 1983) [1981–1984 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 400-655,[5] the Board of Equalization stated that "this section was never intended to override fundamental tax principles regarding the taxation of residents, who enjoy the benefits and protections afforded by this state, and considerations of fairness, i.e., treating similarly situated taxpayers the same." The Board of Equalization explained that it had attempted to limit the application of this section to prevent

---

partners, the entity approach is applied for accounting purposes, and the guaranteed payment may therefore be deductible by the partnership for purposes of Internal Revenue Code section 162(a), but subject to Internal Revenue Code section 263. (Int.Rev. Code, § 707(c).)

[5] There are very few Court of Appeal decisions that even refer to section 17554 or its predecessor, section 17596. (See *Daks · v. Franchise Tax Bd.* (1999) 73 Cal.App.4th 31 [85 Cal.Rptr.2d 927] [holding section 17554 inapplicable where a more specific statute applies]; *Borchers v. Franchise Tax Board* (1984) 151 Cal.App.3d 504 [198 Cal.Rptr. 734] [court rejected taxpayer's contention that all pension income accrued at time of retirement, and therefore did not reach question of how former section 17596 should be interpreted and applied].) Section 17554 and its predecessor, section 17596, has, however, been interpreted and applied in many administrative decisions and the construction of tax statutes in administrative decisions is entitled to great weight. (See, e.g., *Borchers v. Franchise Tax Board*, at p. 507.)

contravention of the aforementioned principles, but that its efforts were complicated by the statute's "obscure language," and lack of a self-evident purpose. The board reconsidered its prior interpretation that the primary purpose was to prevent double taxation. Instead, it found the purpose of this section was limited to avoiding "treating accrual and cash basis taxpayers differently when they changed residency." Consequently, the section applies only "when two conditions are satisfied: (1) when California's sole basis for taxation is the taxpayer's residency, and (2) when that taxation would differ depending on whether the taxpayer used the accrual method or the cash method of accounting. [Hereafter, the *Money* test.]"

In *Money*, *supra*, [1981–1984 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 400-655, the issue was whether section 17596, the predecessor to section 17554, applied to pension benefits paid to a taxpayer in 1977, as an annuity, after the taxpayer became a California resident. The taxpayer had retired in 1974 while a resident of Florida, and began receiving a monthly pension benefit in that year. Like plaintiffs, he asserted that under the accrual method of accounting his income from pension benefits accrued at the time of his retirement, before his change in residency. Therefore, he argued, section 17596 precluded the State of California from taxing the income he received in 1977. The Board of Equalization agreed that the first condition for application of section 17596 was met because the benefits were taxable by California based solely upon the taxpayer's California residency when the payments were received. The second condition, however, was not met because the state tax provisions applicable to annuities made no distinction between cash and accrual basis taxpayers. In either case, the applicable provisions required that the pension income be included in income in the year received.[6] Consequently, the Board held section 17596 did not apply and the taxpayer was required to include the annuities in taxable income in the year it was received.

Similarly, in *Appeals of Lacey* (Jun. 27, 1984) [1981–1984 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 400-890 (*Lacey*), the taxpayers were partners in a partnership that owned and operated a ranch in Montana. The partnership's accounting was on a calendar year ending December 31. On August 15, 1975, the partnership sold the ranch operations, and on October 1, the taxpayers became California residents. On their personal income tax for 1975, the taxpayers did not include any partnership income or deductions based

---

[6] The relevant provisions cited in the *Money* opinion were former section 17101, which simply specified that "gross income includes any amount received as an annuity," and former section 17112.7, which, among other things, in subdivision (b) provided that the applicable tax "applies for the taxable year in which such amounts are received." These provisions required the taxpayer to include such payments as income in the taxable year received, regardless of whether the taxpayer otherwise accounted on the cash or accrual method. (*Money*, *supra*, [1981–1984 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 400-655.)

upon the sale of the ranch operations, arguing that they "accrued" prior to the change in residency, and therefore were not taxable pursuant to section 17596. The Board of Equalization reiterated that section 17596 "was designed merely to prevent California from treating accrual and cash basis taxpayers differently when they changed residency and were subject to taxation by California on the basis of their residency." Section 17596 did not preclude taxation of their distributive share of the gains and losses for the partnership's entire year under then applicable California law, because the relevant provisions for taxation of partnership distributive shares made no distinction between cash and accrual taxpayers. A partner's distributive share of partnership income or loss included all of the partnership's items of income and deductions for the partnership's taxable year, and was not fixed until the end of that year. The Board concluded that section 17596 did not apply, and that the taxpayers had to include the entire year's gains and losses in computing their personal income tax.[7]

In this case, the first condition of the *Money* test is met. The sole basis for taxation of the non-California source income is the residency of plaintiffs in the State of California when they received it. The dispositive question, then, is whether taxation of the guaranteed payments by the State of California would differ depending on whether plaintiffs used the accrual or the cash method of accounting. We shall conclude that it would not.

Plaintiffs, using a line of reasoning that was adopted by the trial court, reach the erroneous conclusion that section 17554 prevents California from taxing the guaranteed payments received after plaintiffs became California residents, by focusing on the question whether taxation in California would be the same if *Hewitt Associates* used the accrual method of accounting. Plaintiffs reason that, if Hewitt Associates used the accrual method of accounting, it could have deducted the entire amount of the deferred compensation payable over the next 10 years in the year that each plaintiff retired, prior to his or her change in residency.[8] Then, plaintiffs reason, they would have had to include the entire amount in their taxable income for those same

---

[7] We note that, unlike *Lacey, supra,* [1981–1984 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 400-890), which involved a change in residency during the taxable year, here, plaintiffs were California residents during the entirety of each of the taxable years in question. No issue is raised with respect to the taxability of non-California source income received by a part-time resident or nonresident for any part of these years.

[8] Even if we were to accept the premise that relevant inquiry under section 17554 is whether the taxation would be different if *Hewitt Associates* used the accrual method of accounting, we question plaintiffs' conclusion that the entire amount would be deductible in the year of retirement. First, their assertion that under the accrual method the entire amount of their deferred compensation would have been deductible in the year of their respective retirements incorrectly assumes that a guaranteed payment is automatically deductible (see, e.g., *Cagle v. Commissioner of Internal Revenue* (1975) 63 T.C. 86, affd. (5th Cir. 1976) 539 F.2d 409 [holding that such payments are not automatically deductible], and fails to consider whether

years, which were prior to the change in residency. (26 C.F.R. § 1.707-1(c) (2003) [guaranteed payments must be included in ordinary income for taxable year "in which the partnership deducted such payments as paid or accrued under its method of accounting"].) The trial court adopted this reasoning to conclude that section 17554 therefore precluded California from taxing these payments.

■ Section 17554 was designed to prevent California from treating differently accrual- and cash-basis taxpayers who change residency. *Plaintiffs, not Hewitt Associates, are the taxpayers; plaintiffs, not Hewitt Associates, changed residency.* The method of accounting elected by Hewitt Associates affects the year in which plaintiffs must include the guaranteed payments in their income, because guaranteed payments must be included in the taxable year "in which the partnership deducted such payments as paid or accrued under its method of accounting." (26 C.F.R. § 1.707-1(c) (2003); Int.Rev. Code, §§706(a), 707(c).) Nevertheless, the federal provisions made applicable by section 17851 make the partnership election binding upon all partners, *regardless of the method the partner uses for accounting of other income,* and applies to all partnership income in the form of guaranteed payments. With respect to *partnership income,* plaintiffs were required to include guaranteed payments as "ordinary income for . . . [their] taxable year within or with which ends the partnership taxable year in which *the partnership* deducted such payments as paid or accrued under its method of accounting." (26 C.F.R. § 1.707-1(c) (2003); Int.Rev Code, §§ 706(a), 707(c).) Hewitt Associates reported on a cash method of accounting, under which a deduction is allowed when an item is paid. (26 C.F.R. § 1.461-1(a)(1) (2003).) Even if plaintiffs were accrual-basis taxpayers for the purpose of accounting for other types of income, they nevertheless would have had to include the guaranteed payments from the partnership as income for each of the taxable years that are

---

payment spread over a 10-year period would have to be capitalized pursuant to Internal Revenue Code section 263. Second, plaintiffs rely upon a general rule of accrual of liability based upon the performance of services. (Int.Rev. Code, § 461(h)(2)(A).) It is not at all clear, however, that the deferred compensation was a liability for "services performed." In the case of plaintiff Norton the payments were for the repayment of 50 percent of her capital account, and the difference between her capital account calculated on an accrual basis and a cash basis. In the case of plaintiff Paine, years of service were part of the formula for calculating the amount of his deferred compensation, but the payments were based upon partnership earnings in prior years, repayment of his capital account, and the difference between the capital account on an accrual and cash basis, plus interest.

If the deferred compensation was not for services performed, the applicable rules would instead be Internal Revenue Code section 461(h)(2)(D) and 26 Code of Federal Regulations section 1.461-4(g)(7) (2003), which provide that "economic performance," and hence accrual of liability, occurs when *payment is made.* In accordance with these provisions, taxation would still be the same if Hewitt Associates used the accrual method of accounting, because Hewitt Associates' liability for the guaranteed payments would accrue in each of the years payments were made.

the subject of their refund claim. Therefore, the same rules for including guaranteed payments in taxable income apply to plaintiffs whether they were cash or accrual method taxpayers, and former section 17554 does not preclude the taxation of the guaranteed payments they received after becoming California residents.

■ Nor are plaintiffs correct in their assertion that the entire amount of the deferred compensation would have accrued to them at the time of their retirement under the "all events test." The general rule for *income* accrual is that "[u]nder an accrual method of accounting, income is includible in gross income when all the events have occurred which fix the right to receive such income, and the amount thereof can be determined with reasonable accuracy." (26 C.F.R. § 1.451-1(a) (2003); § 17551.) Plaintiffs argue that, unlike the annuity payments received by the retirees in *Borchers v. Franchise Tax Board, supra*, 151 Cal.App.3d at pages 506–507, which the court held *did not* accrue at retirement, their deferred compensation did. The ·taxpayers in *Borchers* had chosen a survivorship option, which rendered the amount they would ultimately receive uncertain. The court concluded, therefore, that this income did not accrue at the time of their retirement, which was before they became California residents. (*Id.* at p. 507.) By contrast, plaintiffs point out that their deferred compensation was payable in equal installments, and there was no contingency or uncertainty regarding the total amounts they would receive. The flaw in this analysis, however, is that the general income accrual rule does not apply to guaranteed payments. The same regulation that recites the general rule specifies that "[f]or the year in which a partner must include his distributive share of partnership income, see [Internal Revenue Code] section 706(a) and paragraph (a) of [26 C.F.R.] § 1.706-1." And, paragraph (a) of 26 Code of Federal Regulations section 1.706-1 (2003) states that a partner must include "guaranteed payments" in income in the taxable year in which it is deductible by the partnership under its method of accounting.[9]

---

[9] The requirement that, irrespective of the accounting method used by the partner for *other* types of income, a current or retired partner must include *guaranteed payments from a partnership* in income in the year the partnership deducts such payments as paid or accrued under its method of accounting, "results in a perfect pairing of income and deduction in the same year." This pairing is consistent with another general rule of deferred compensation set forth in Internal Revenue Code section 404(a)(5), which provides that, except in the case of a qualified retirement plan, an employer may only deduct deferred compensation in the year the employee includes it in income. If we were to apply former section 17554 in the manner plaintiffs suggest so that an accrual method is applied to accounting for the partners' income tax on payments from the partnership despite *the partnership*'s use of the cash method, deducting it only as paid, the result would be a mismatch of income and deduction. (See *Ford Motor Co. v. C.I.R.* (6th Cir. 1995) 71 F.3d 209, 212 [U.S.C. § 446(b) gives Internal Revenue Commissioner discretion to determine whether taxpayer's method of accounting results in a clear reflection of income that attempts to match income with deductions].)

California taxation of guaranteed payments for personal income tax purposes is therefore the same for accrual- and cash-basis taxpayers. There would be no difference in taxation between a cash- or accrual-basis taxpayer, who retired from Hewitt Associates, started receiving guaranteed payments under the deferred compensation plan before establishing California residency, and continued receiving such payments as a California resident. In both cases, the taxpayer who changed residency would have to include the guaranteed payments as income in each taxable year that it was paid. Section 17554 therefore does not preclude taxation of plaintiffs for the guaranteed payments they received after they became California residents. The trial court erred in determining that plaintiffs were entitled to a refund of the tax paid on the guaranteed payments they received from Hewitt Associates.[10]

## CONCLUSION

The judgment is reversed.

Marchiano, P. J., and Margulies, J., concurred.

A petition for a rehearing was denied May 28, 2004, and respondents' petition for review by the Supreme Court was denied July 21, 2004.

---

[10] In light of our conclusion that section 17554 does not prevent taxation of the guaranteed payments that are the subject of plaintiffs' claim for a refund, it is not necessary to reach the Board's additional contention that section 17554 is a general statute applicable to all types of income and does not control over the more specific provisions incorporated into California law by section 17851 that specify when a partner or retired partner must include guaranteed payments in taxable income. (See *Daks v. Franchise Tax Bd., supra,* 73 Cal.App.4th at pp. 34–35 [the court, with minimal analysis, applied the principle that a specific statute relating to a particular subject prevails over a more general provision to reject a taxpayer's contention that § 17554 precluded taxation of pension benefits he became entitled to receive as a nonresident, but continued to receive after he became a California resident].)