Filed 1/9/15 (unmodified opn. attached; pub. order 1/22/15 [see end of opn.])

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COBLENTZ, PATCH, DUFFY & BASS, LLP,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>     Defendants and Respondents. | A135509<br><br>(City & County of San Francisco<br>  Super. Ct. No. CGC-11-514292)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>NO CHANGE IN JUDGMENT** |

**BY THE COURT**:

It is ordered that the opinion filed on December 24, 2014, is modified as follows:

(1) On page 13, delete first sentence, and substitute the following sentence:

Although Proposition Q does not define "return on capital investment," in its common understanding and as pertinent here, the phrase refers to a partnership's distributions related to capital contributions made by a partner. (Corp. Code, § 16401(a)(1)(2) [10].)

(2) On page 14, line 14 of the second full paragraph, replace the word "underling" with the word "underlining."

The petition for rehearing is denied. There is no change in the judgment.

Dated:                      _____

                                McGuiness, P.J.

_____

Filed 12/24/14  (unmodified version; pub. order 1/22/15 [see end of opn.])

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COBLENTZ, PATCH, DUFFY & BASS LLP,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>    Defendants and Respondents. | A135509<br><br>(City & County of San Francisco<br>  Super. Ct. No. CGC-11-514292) |

By its lawsuit Coblentz, Patch, Duffy & Bass LLP, a limited liability partnership practicing law, challenges the validity and scope of Proposition Q, which amended the Payroll Expense Tax Ordinance of the City and County of San Francisco (the city) (San Francisco Bus. & Tax Reg. Code, article 12-A, § 901, et seq.[1]).  Plaintiff paid the payroll expense tax calculated pursuant to Proposition Q, and the city rejected its administrative claim.  Plaintiff now seeks a refund of that portion of the tax that it paid on the profits distributed to the law firm's equity partners.  After a review of Proposition Q and the arguments of the parties, we conclude the trial court correctly determined that some portion of plaintiff's profit distributions to its equity partners represents "compensation for services," which sum is to be included in the payroll expense tax base.  We further conclude Proposition Q does not violate either article XIIIC of the California Constitution

---

[1]    All further unspecified section references are to the San Francisco Business & Tax Regulations Code.

1

(added by Proposition 218) or California Revenue & Taxation Code section 17041.5. Accordingly, we affirm the judgment entered in favor of defendants city and its treasurer and tax collector Jose Cisneros.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Applicable Law - City's Payroll Expense Tax Ordinance

In 1970, the city's voters approved a Payroll Expense Tax Ordinance (hereinafter also referred to as the tax ordinance).  As now codified in the city's regulations, the payroll expense tax is imposed "for general governmental purposes and in order to require commerce and the business community to carry a fair share of the costs of local government in return for the benefits, opportunities and protections afforded by the City. Proceeds from the tax shall be deposited in the City's general fund and may be expended for any purposes of the City."  (§ 903, subd. (b).)  The payroll expense tax is payable by "every person engaging in business within the City as defined in Section 6.2-12 of Article 6 [2]; provided, that such tax shall be levied only upon that portion of the person's payroll expense that is attributable to the City as set forth in Section 904 [3]."  (§ 903, subd. (a).)

---

[2]     Section 6.2-12, states the conditions under which a person is considered to be engaging in business within the city.

[3]     Section 904, reads, in pertinent part:  "Where payroll expense is incurred by reason of work performed or services rendered by an individual, wholly within the City, all of the payroll expense for such individual shall be attributable to the City and subject to tax hereunder.  Where payroll expense is incurred by reason of work performed or services rendered by an individual partly within and partly without the City, the portion of such payroll expense attributable to the City (and subject to tax hereunder) shall be determined as follows: [¶] (a) . . ., the portion of such payroll expense attributable to the City shall be the portion of such payroll expense which the total number of working hours employed within the City bears to the total number of working hours within and without the City. [¶] (b) If the amount of such payroll expense depends on the volume of business transacted by such individual, then the portion of such payroll expense attributable to the City shall be the portion of such payroll expense which the volume of business transacted by such individual in the City bears to the volume of business transacted by such individual within and without the City. [¶] (c) If it is impracticable, unreasonable or improper to apportion such payroll expenses as aforesaid either because of the particular nature of the services of such individual, or on account of the unusual basis of compensation, or for any other reason, then the amount of such payroll earnings

2

Before the general election in November 2008, the tax ordinance defined "payroll expense" to mean "the compensation paid to, on behalf of, or for the benefit of an individual, including salaries, wages, bonuses, commissions, property issued or transferred in exchange for the performance of services (including but not limited to stock options) and any other form of compensation, who, during any tax year, performs work or renders services, in whole or in part in the City; and if more than one individual during any tax year performs work or renders services in whole or in part in the City, the term '[p]ayroll [e]xpense' means the total compensation paid including salaries, wages, bonuses, commissions, property issued or transferred in exchange for the performance of services (including but not limited to stock options) and any other form of compensation, to all such individuals." (Former § 902.1, subd. (a).) The tax ordinance also described the method for the calculation of the expense payroll tax: "The rate of the payroll expense tax shall be 1-1/2 percent. The amount of a person's liability for the payroll expense tax shall be the product of such person's taxable payroll expense multiplied by 0.015. The amount of such tax for Associations [4] shall be 1-1/2 percent of the payroll expense of such Association, plus 1-1/2 percent of the total distributions made by such Association by way of salary to those having an ownership interest in such Association. Amounts paid or credited to those having an ownership interest in such Association prior and in addition to the distribution of ownership profit or loss shall be presumed to be distributions 'by way of salary' and for personal services rendered, unless the taxpayer proves otherwise by clear and convincing evidence." (§ 903.1.)

In the general election of 2008, the voters were asked to consider Proposition Q, which was titled "Modifying the Payroll Expense Tax." In pertinent part, the voters were

---

reasonably attributable to work performed or services rendered in the City shall be determined on the basis of all relevant facts and circumstances of the particular case, in accordance with any rulings or regulations issued or promulgated by the Tax Collector for the purpose."

4       Section 6.2-4 defines the term "association" to include "a partnership, limited partnership, limited liability company, limited liability partnership and any other form of unincorporated business or enterprise (except a sole proprietorship)."

3

asked: "Shall the City specify that certain partnerships and other businesses are subject to the City's payroll expense tax . . .?" The Digest by the Ballot Simplification Committee read, in pertinent part, as follows: "**THE WAY IT IS NOW**: The City imposes a 1.5% tax on the payroll expenses of businesses that have employees working for them in San Francisco. Payroll expenses include salaries, wages, bonuses and commissions. The payroll expense tax does not apply to compensation to owners of certain partnerships and businesses. . . . [¶] **THE PROPOSAL**: Proposition Q would specify that the City's 1.5% payroll expense tax applies to compensation paid to shareholders of professional corporations, members of limited liability companies, and owners of partnerships for their services. [¶] Proposition Q would allow these types of businesses to choose one of two ways to calculate how much of the payments to their owners is a taxable payroll expense. The business could: [¶] determine how much of the payment to its owners is taxable compensation for services, or [¶] calculate payroll expenses for each owner using a formula specified in the Tax Code." The City controller explained to the voters the import of Proposition Q as follows: "Should this ordinance be approved, in my opinion, it would result in a net annual tax revenue increase to the City of approximately $10.5 million. The ordinance would change the number and types of businesses in the City that pay the payroll tax. [¶] Some types of corporations compensate their partners by paying them a share of the firm's annual profits in addition to any salary paid for services rendered. Currently, the City's payroll tax is not paid on these profits. The proposed ordinance would require the payroll tax to be paid on all partner compensation, excluding returns on investment, and would result in additional gross annual tax revenue of approximately $17 million. The businesses that would be affected are typically law, accounting, medical, and other types of professional corporations."

The ballot material also included the legal text of Proposition Q, in pertinent part, as follows:

**Ordinance *submitting to the voters an ordinance* amending the Business and Tax Regulations Code by (*1*) amending Section 902.1 and adding Section 902.2 to clarify the tax liability of "pass through entities" under the Payroll Expense Tax**

4

**Ordinance, including partnerships, Subchapter S corporations, limited liability companies, limited liability partnerships, and other persons and entities not subject to federal income tax or which are allowed a deduction in computing such tax for distributions to the owners or beneficiaries of such persons or entities *and specifying safe harbor measure of taxable payroll expense for owners of pass through entity (200% of compensation for its most highly paid quartile of employees, provided entity has at least 4 employees) . . . .***

Note: Additions are *single-underline italics Times New Roman*.
Deletions are *~~strikethrough italics Times New Roman~~*.

*~~Be it ordained by the People of the City and County of San Francisco~~*:

*~~Section 1~~*.  *ORDAINED that* ~~P~~*p*ursuant to Article XIIIC of the Constitution of the State of California, *the Board of Supervisors hereby submits* this ordinance ~~shall be submitted~~ to the qualified electors of the City and County of San Francisco; at the November 4, 2008 general municipal election *and that this ordinance* shall become operative only if approved by the qualified electors at such election.

*Be it ordained by the People of the City and County of San Francisco*:

Section *1*~~2~~.  The San Francisco Business and Tax Regulations Code is hereby amended by amending Section 902.1 and adding Section 902.2 to read as follows:

Sec. 902.1.  PAYROLL EXPENSE.  (a) The term "Payroll Expense" means the compensation paid to, on behalf of, or for the benefit of an individual, *including shareholders of a professional corporation or a Limited Liability Company ("LLC")*, including salaries, wages, bonuses, commissions, property issued or transferred in exchange for the performance of services (including but not limited to stock options), *compensation for services to owners of pass-through entities*, and any other form of compensation, who during any tax year, perform work or render services, in whole or in part in the City; and if more than one individual or *shareholders of a professional corporation or members of an LLC,* during any tax year performs work or renders

5

services in whole or in part in the City, the term "Payroll Expense" means the total compensation paid including salaries, wages, bonuses, commissions, property issued or transferred in exchange for the performance of services (including but not limited to stock options), *in addition to any compensation for services to owners of pass-through entities*, and any other form of compensation *for services*, to all such individuals *and shareholders of a professional corporation or members of an LLC*.

(b) . . .

(c) . . .

(d) All compensation, including all pass-through compensation for services paid to, on behalf of, or for the benefit of owners of a pass-through entity, shall be included in the calculation of such entity's payroll expense tax base for purposes of determining such entity's tax liability under this Article.  For purposes of this section, the "pass-through compensation for services" of a pass-through entity shall be the aggregate compensation paid by such entity for personal services rendered by all such owners, and shall not include any return on capital investment.  The taxpayer may calculate the amount of compensation to owners of the entity subject to the Payroll Expense Tax, or the taxpayer may presume that, in addition to amounts reported on a W-2 form, the amount subject to the payroll expense tax is, ~~90% of the amount of net earnings from self-employment derived from the entity for federal income tax purposes.~~ *for each owner, an amount that is two hundred percent (200%) of the average annual compensation paid to, on behalf of, or for the benefit of the employees of the pass-through entity whose compensation is in the top quartile (i.e. 25%) of the entity's employees who are based in the City; provided, the total number of employees of the entity based in the City is not less than* ~~twenty~~ *four*.

SEC. 902.2.  PASS-THROUGH ENTITY.  The term "pass-through entity" includes a trust, partnership, corporation described in Subchapter S of the Internal Revenue Code of 1986, as amended, limited liability company, limited liability partnership, professional corporation, and any other person or entity (other than a disregarded entity for federal income tax purposes) which is not subject to the income tax imposed by Subtitle A, Chapter 1 of the Internal Revenue Code of 1986, as amended, or which is allowed a

6

*deduction in computing such tax for distributions to the owners or beneficiaries of such*

*person or entity. Any person exempt from payment of the Payroll Expense Tax under*

*Section 905-A or 906 of this Article shall not be disqualified from or denied such*

*exemption as a result of being a "pass-through entity" under this Section*.

Proposition Q was approved after a majority (74.20 %) of the city's electorate voted "Yes," in the general election held on November 4, 2008.

### B. Current Lawsuit[5]

In the first amended complaint, the operative pleading, plaintiff[6] alleged that in February 2010, it filed a timely 2009 payroll expense tax return and submitted a final payment for the balance of the tax due, having submitted three quarterly pre-payments of 2009 payroll expense tax in 2009. To avoid penalties, plaintiff paid tax on "Partnership profits." A year later, plaintiff filed a timely administrative claim for a refund of a portion of the payroll expense tax, $194,903.00, plus interest, representing "the amount of the 2009 Payroll Expense Tax paid by Plaintiff on non-guaranteed distributions of Partnership net income to Partners, i.e., Partnership profits." After the city denied the refund claim, plaintiff filed this lawsuit.

The amended pleading further alleged that plaintiff was entitled to a tax refund for the following reasons. (1) as a matter of law (statutory construction), Proposition Q only allows the city to impose the payroll expense tax on an equity partner's profit

---

[5]     Because plaintiff's action was resolved by demurrer, we set forth the facts as alleged in the first amended complaint (the operative pleading), the exhibits attached to that pleading, and matters that were judicially noticed by the trial court. (See *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) Plaintiff also filed a separate request in this court seeking judicial notice of certain documents relating to certain city legislative acts. In the absence of any opposition, we grant plaintiff's request for judicial notice. We have considered the judicially-noticed documents considered by the trial court and submitted on appeal only to the extent they are necessary to our resolution of the issues raised on appeal.

[6]     Plaintiff is a limited liability partnership governed by California's Uniform Partnership Act of 1994 (Corp. Code, § 16100 et. seq.)

7

distributions that represent "compensation for services" that is "guaranteed," i.e., moneys that are not dependent on whether the partnership earns a profit for the partner to be entitled to receive the payments; none of plaintiff's profit distributions to equity partners are "guaranteed;" and therefore, plaintiff's nonguaranteed profit distributions to those partners are not taxable under Proposition Q (first cause of action); (2) the voters did not approve Proposition Q because the city did not properly identify or describe the changes to the existing tax ordinance in violation of Article XIIIC of the California Constitution (added by Proposition 218) (second cause of action); and (3) the enforcement of Proposition Q violates California Revenue and Taxation Code section 17041.5, which bans any tax on income – or any portion thereof – imposed by local jurisdictions, including chartered cities such as San Francisco (third cause of action). In the third cause of action, plaintiff also alleged that "taxation of Partnership income through Proposition Q would violate the federal and California Constitutions, including, but not limited to the Due Process, Commerce, and Equal Protection Clauses."

The city filed a demurrer to the first amended pleading, which was opposed by plaintiff. After oral argument, the trial court resolved the demurrer as follows. The first cause of action was found deficient because the language of the tax ordinance, as applied to plaintiff's equity partners, "covers 'compensation for services' received by such partners, whether or not such compensation is paid in the form of 'guaranteed payments.' " The court granted plaintiff leave to amend, provided that the law firm could allege it had overpaid amounts due under Proposition Q. The second and third causes of action were found deficient without leave to amend because there had been no showing that Proposition Q violated either Proposition 218 or California Revenue and Taxation Code section 17041.5. After plaintiff failed to file an amended pleading, the court entered judgment in favor of the city on May 10, 2012. Plaintiff's timely appeal ensued. [7]

---

[7]     In its notice of appeal, plaintiff seeks review of the May 10, 2012, judgment and also appeals from "all orders that are separately appealable, including but not limited to the Order Sustaining Demurrer to First Amended Complaint entered March 29, 2012." In the absence of any showing that a separate appeal lies from any order filed before entry

8

## DISCUSSION

### A. Standard of Review

In evaluating the ruling on the city's demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### B. First Cause of Action – Validity and Scope of Proposition Q

In its first cause of action, plaintiff challenges Proposition Q, arguing that the ordinance cannot be read to tax any portion of the partnership's profit distributions paid to equity partners because none of those distributions constitute "compensation for services." According to plaintiff, equity partners receive either (a) guaranteed payments for services in the form of "salary-like payments" (concededly part of payroll expense tax base) and/or (b) a portion of the partnership's profit distributions. Plaintiff then argues the partnership's profit distributions do not include "compensation for services" because as a general rule an equity partner is not entitled to "compensation for services" (Corp. Code, § 16401, subd. (h)), and profit distributions are not treated as "compensation for services" under federal and state tax laws and regulations for the purpose of an equity partner's individual income tax liability. (26 U.S.C. §§ 305, subd. (a), 707, subd. (c); Cal. Rev. & Tax Code, § 17851; see, e.g., *Carey v. United States* (Ct. Cl. 1970) 427 F.2d 763, 767; *Foster v. United States* (S.D.N.Y. 1963) 221 F. Supp. 291, 293-295, affd. (2d Cir. 1964) 329 F.2d 717, 719; *Paine v. Franchise Tax Bd*. (2004) 118 Cal.App.4th 63,

---

of the judgment, we dismiss the appeals from any such orders including the March 29, 2012, order sustaining the demurrer to the first amended complaint. (Code Civ. Proc., § 904.1, subd. (a).) We have considered the dismissed orders to the extent they are brought up for review on appeal from the judgment. (Code Civ. Proc., § 906.)

9

67.)  Because these tax laws and regulations, and case authority interpreting them, precludes characterization of profit distributions to equity partners as "compensation for services," plaintiff then argues this principle applies with equal force with respect to calculating the partnership's payroll expense tax base under Proposition Q.

We have no quarrel with plaintiff's arguments or the authorities on which it relies concerning the calculation of an equity partner's individual income tax liability for profit distributions paid by the law firm.  The problem with plaintiff's argument is that Proposition Q is not concerned with an equity partner's individual income tax liability for profit distributions.  As we now discuss, the tax ordinance more broadly seeks to tax "compensation for services" reflected in the calculation of the partnership's profit distributions.

The federal tax scheme, as incorporated in California in all relevant respects (Cal. Rev. & Taxation Code, § 17851), "reflects [a] hybrid approach to the taxation of partnership income.  Section 703(a) [of the Internal Revenue Code], for example, refers to '[t]he taxable income of a partnership' and sets forth specific rules for calculating such income, whereas Section 702(a)(8) [of the Internal Revenue Code] provides that 'each partner shall take into account separately his distributive share of the partnership's . . . taxable income or loss.' . . . [T]he two provisions are not in conflict, because the calculation of income at the partnership level is nothing more than ['] a method of centralizing a host of decisions that must be made uniformly for all partners, such as whether particular items received by the partnership constitute income or the return of capital, whether expenditures qualify as ordinary or necessary expenses of conducting the firm's business, and so on.  In effect, the partnership is treated as an entity in analyzing the financial results of its operations, since these ingredients determine the chemical composition of the liquid that is channeled through the partnership to the partners.[']" (*Estate of Newman v. C.I.R.* (2d Cir. 1991) 934 F.2d 426, 432-433; see *Sacramento Suncreek Apartments, LLC v. Cambridge Advantaged Properties II, L.P.* (2010) 187 Cal.App.4th 1, 12 ["[l]imited partnerships are treated as associations of individuals for income tax purposes but as discrete entities for other purposes"].)  "Section 703 of the

10

Internal Revenue Code . . ., insofar as pertinent here, prescribes that '[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual.' 26 U.S.C. § 703(a). Thus, while the partnership itself pays no taxes, 26 U.S.C. § 701, it must report the income it generates and such income must be calculated in largely the same manner as an individual computes his personal income. For this purpose, then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed." (*United States v. Basye* (1973) 410 U.S. 441, 448, fn. omitted (*Basye*).) Thus, pertinent to the scope and validity of the payroll expense tax base at issue here, the partnership's profit distributions are viewed at the partnership level. The partnership's profit distributions necessarily require a calculation of its gross income. And, as conceded by plaintiff, "one of the major sources of [a partnership's] gross income, as defined in § 61(a)(1) of the [Internal Revenue] Code, is 'compensation for services, *including fee*s' " received for client services. (*Basye, supra,* at p. 449, italics added.) Accordingly, we conclude some portion of plaintiff's profit distributions do include an equity partner's "compensation for services," as that term is used in Proposition Q, which sum is to be included in the calculation of the payroll expense tax base. The trial court therefore properly sustained the demurrer to the first cause of action on this ground.[8]

---

[8] Plaintiff's reliance on section 903.1 is not persuasive. Section 903.1 states generally that the payroll expense tax base shall include amounts paid "by way of salary" to owners of an association (including by definition a partnership and limited liability partnership), and that "[a]mounts paid [association owners] prior and in addition to the distribution of ownership profit or loss shall be presumed to be distributions by way of salary." (*Ibid*.) Section 903.1 does not address, one way or the other, the treatment of a partnership's profit distributions to its equity partners, which, as noted in the text, includes compensation for services to owners (equity partners) of pass-through entities (limited liability partnerships). Instead, it is Proposition Q that now specifies that the payroll expense tax base is to include that portion of a limited liability partnership's profit distributions paid to equity partners that reflects compensation for services and not a return on capital investment. (§ 902.1, subd. (d).)

11

Plaintiff also argues that Proposition Q violates due process if it is read to tax any portion of the profit distributions paid to equity partners.[9] "[T]o pass muster under the federal and state due process clauses, a [tax ordinance] must provide reasonably adequate standards to guide enforcement. (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 702 [209 Cal. Rptr. 682, 693 P.2d 261]; *Britt v. City of Pomona* (1990) 223 Cal.App.3d 265, 278 [272 Cal. Rptr. 724].) Government regulation must be sufficiently clear so that it is understandable and does not encourage arbitrary and discriminatory application. (*Chalmers v. City of Los Angeles* (9th Cir. 1985) 762 F.2d 753, 757; *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 227-228, 92 S. Ct. 2294]; *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 231, fn. 30 [82 Cal. Rptr. 175, 461 P.2d 375].) A . . . properly adopted regulation . . . will not be held void for uncertainty if any reasonable and practical construction can be given its language. (*Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 405 [89 Cal. Rptr. 78, 47 A.L.R.3d 286]; see *California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal. Rptr. 361, 551 P.2d 1193].)" (*Barclays Bank Internat. Ltd. v. Franchise Tax Bd.* (1992) 10 Cal.App.4th 1742, 1759 affd. sub nom. *Barclays Bank PLC v. Franchise Tax Bd.* (1994) 512 U.S. 298 (*Barclays*).)

With these authorities firmly in mind, we see no merit to plaintiff's argument that Proposition Q is unconstitutionally vague on its face because it does not define "compensation for services" or "return on capital investment." "[I]n its common understanding the term 'compensation' is not restricted to any particular method or mode of payment: 'The ordinary meaning of the term "compensation," as applied to officers, is remuneration *in whatever form it may be given, whether it be salaries and fees, or both combined.*' " (*Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630, 645.)

---

[9] The parties present arguments as to whether or not plaintiff's due process challenge is properly before this court. Because the nature of plaintiff's due process claim was raised at the hearing on demurrer, and, if appropriate, we may grant leave to amend, even if not requested in the trial court or on appeal, we will address the merits of plaintiff's purported due process challenge. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746-747.)

Although Proposition Q does not define "return on capital investment," in its common understanding and as pertinent here, the phrase refers to a partnership's distribution of a return of capital contribution made by a partner. (Corp. Code, § 16401(a)(1)(2) [10].) We therefore reject plaintiff's argument that the actual statutory language is "circular, ambiguous, and essentially provides no definition." "[T]he 'ambiguities' [plaintiff] complains of do not arise from the language of the [tax ordinance] itself, but rather from [plaintiff's] attempt to impose limits on the application of the ordinance. . . . [H]owever, 'the mere fact that a new statute requires interpretation does not make it unconstitutionally vague.' " (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1182.) Because we are dealing only with a facial attack on Proposition Q on the grounds of vagueness, which we have rejected, we do not need to address plaintiff's related arguments concerning "the adequacy of measures actually taken by the city" regarding "compensation for services" and "return on capital investment" problems. (*Cotati Alliance for Better Housing v. City of Cotati* (1983) 148 Cal.App.3d 280, 289, fn. 10.)

## C.    Second and Third Causes of Action

In the second and third causes of action, plaintiff alleges that even if Proposition Q can be read to require a portion of its profit distributions to equity partners to be included in the payroll expense tax base, the law violates other "bedrock requirements for local tax initiatives" - Proposition 218 and California Revenue and Taxation Code section 17041.5. As we now discuss, we conclude plaintiff's arguments are unavailing and therefore its requests to reinstate these causes of action fail.

---

[10]    Corporation Code section 16401, provides, in pertinent part, that "[e]ach partner is deemed to have an account that is subject to both of the following: (1) Credited with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, the partner contributes to the partnership and the partner's share of the partnership profits. (2) . . . [C]harged with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, distributed by the partnership to the partner and the partner's share of the partnership losses." (*Id*., subd. (a)(1), (2).)

## 1.       Proposition 218

Proposition 218, which added article XIIIC to the California Constitution, "generally prohibits local governments from imposing taxes without voter approval. (*Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310, 1319, [153 Cal. Rptr. 352].) [¶] Article XIIIC, section 2, subdivision (c) of the California Constitution (subdivision (c)) provides: 'Any general tax imposed, extended, or increased, without voter approval, by any local government on or after January 1, 1995, and prior to the effective date of this article [November 6, 1996], shall continue to be imposed only if approved by a majority vote of the voters voting in an election on the issue of the imposition, which election shall be held within two years of the effective date of this article [November 6, 1998] and in compliance with subdivision (b).' " (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 128-129 (*Owens*).)

In the second cause of action, plaintiff alleges Proposition Q violated Proposition 218 because the ballot's recitation of the legal text of the tax ordinance failed to include the necessary emphasis on the language in new subdivision (d) of section 902.1 regarding how a pass-through entity (§ 902.2) was to calculate the payroll expense tax. According to plaintiff, "[t]he failure to italicize and underline all of Section 902.1(d) is a failure to *submit* Section 902.1(d) to the voters for their approval as required by the California Constitution." We disagree. The purpose of distinguishing in print "the provisions of the proposed measure and the existing provisions of law repealed or revised by the measure" is "to facilitate comparison." (Elec. Code, § 9086, subd. (e); Gov. Code, § 88002, subd. (e); see S.F. Municipal Election Code, Article V, § 500, subd. (c)(8) [ballot material shall contain "the full legal text of each measure" to be voted on at the election]; § 501 ["Whenever the text of any proposed measure . . . is printed in the voter information pamphlet . . ., the Director of Elections shall distinguish additions to or deletions from existing legislation in the printed text of the measure by underling, bold type, strike-outs or other appropriate means. An explanation of the method used to distinguish the proposed changes shall immediately precede the text of the measure"].) Here, despite any failure to facilitate a comparison between the proposed amended text

14

and the existing text of section 902.1, the entirety of the new section (d) was set forth in the ballot. Thus, the voters were informed that if approved the tax ordinance would read as presented in the legal text. [11] Thus, the fact that the legal text of Proposition Q did not emphasize the entirety of the new section (d) of section 902.1, describing the methods of calculating the payroll expense tax, did not violate Proposition 218. "Proposition 218 requires voter approval of new local government taxes. The [city] fully complied with Proposition 218 by holding an election on" Proposition Q. (*Owens, supra,* 220 Cal.App.4th at p. 130.) Accordingly, we reject plaintiff's request to reinstate the second cause of action alleging that Proposition Q violates Proposition 218.[12]

## 2. California Revenue and Taxation Code section 17041.5

California Revenue and Taxation Code section 17041.5 reads, in pertinent part: "Notwithstanding any statute, ordinance, regulation, rule or decision to the contrary, no city, county, city and county, governmental subdivision, district, public and quasi-public corporation, municipal corporation, whether incorporated or not or whether chartered or not, shall levy or collect or cause to be levied or collected any tax upon the income, or any part thereof, of any person,[13] resident or nonresident."

---

[11] This case does not fall within the rubric of cases in which the courts found a violation of Proposition 218 because "nothing was submitted to voters – the new tax or increased tax was simply adopted by the local government," as plaintiff suggests. (See *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 813, 814-815 [discusses provisions of Gov. Code, § 53723 similar to those of Proposition 218]; *Weisblat v. City of San Diego* (2009) 176 Cal.App.4th 1022, 1027, 1045; *Bay Area Cellular Telephone Co. v. City of Union City* (2008) 162 Cal.App.4th 686, 692, 699; *AB Cellular LA, LLC v. City of Los Angeles* (2007) 150 Cal.App.4th 747, 752-754, 761-764.)

[12] In light of our determination, we need not address plaintiff's arguments that the trial court erred in applying a due process analysis to its Proposition 218 challenge.

[13] " 'Person' includes individuals, fiduciaries, partnerships, limited liability companies, and corporations." (Cal. Rev. & Tax. Code, § 17007.) "A person shall be recognized as a partner for income purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person." (Cal. Rev. & Tax. Code, § 17008.)

15

In the third cause of action, plaintiff alleges that Proposition Q and as interpreted by the city, violates section 17041.5 of the California Revenue and Taxation Code because the payroll expense tax is an "income tax" on the income of the limited liability partnership. However, plaintiff's argument was rejected in *A.B.C. Distributing Co. v. City and County of San Francisco* (1975) 15 Cal.3d 566 (*A.B.C. Distributing Co.*). In that case, our Supreme Court upheld the city's payroll expense tax, explaining: "The short answer . . . is that the payroll expense tax is not a tax on or measured by [plaintiff's] income. Instead, the tax is imposed on plaintiff[ ] by reason of [its] employment of labor within the city and county, measured by the expense incurred by plaintiff[ ] in conducting this aspect of [its] business. The fact that the tax is measured by wages paid to the employees would not convert the tax to an income tax. . . . [¶] Plaintiff[ ] appear[s] to assume that the payroll expense tax herein is an 'income tax' because it will be paid from plaintiff['s] income. Yet, . . . all taxes necessarily involve some reduction of and relationship to available revenues." (*Id*. at p. 576.) [14] Thus, "the payroll expense tax is a valid tax measure authorized by the 'home rule' provisions of the state Constitution (art. XI, §§ 5, 7) which impliedly empower local governmental agencies to levy taxes for general revenue purposes." (*A.B.C. Distributing Co., supra*, at p. 576.) Accordingly, we reject plaintiff's request to reinstate the third cause of action alleging Proposition Q is an invalid income tax in violation of section 17041.5 of the California Revenue and Taxation Code.

## DISPOSITION

The appeals from all orders filed prior to entry of the May 10, 2012, judgment are dismissed. The judgment of May 10, 2012, is affirmed. Defendants are awarded costs on appeal.

---

[14] As later explained by the Supreme Court, "[u]sing compensation as the measure of the tax liability is a proper means of meeting constitutional requirements by scaling the tax to 'the quantum of business actually done in the taxing jurisdiction.' " (*Weekes v. City of Oakland* (1978) 21 Cal.3d 386, 397.)

16

 

 

                              _____

                              Jenkins, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.

Filed 1/22/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COBLENTZ, PATCH, DUFFY & BASS LLP, <br><br>      Plaintiff and Appellant, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO et al., <br><br>      Defendants and Respondents. | A135509 <br><br> (City & County of San Francisco <br>   Super. Ct. No. CGC-11-514292) |

**BY THE COURT:**

The written opinion which was filed on December 24, 2014 and modified on January 9, 2015, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date:_____  _____P.J

1

Trial Court:                                    Superior Court, City and County of San
                                                Francisco


Trial Judge:                                    Hon. Harold E. Kahn


Counsel for Appellant Coblentz, Patch,          Amy L. Silverstein
Duffy & Bass                                    Edwin P. Antolin
                                                Johanna W. Roberts
                                                Charles E. Olson
                                                Lindsay T. Braunig
                                                SILVERSTEIN & POMERANTZ


Counsel for Respondent City and County          Dennis J. Herrera, City Attorney
of San Francisco, Jose Cisneros, Treasurer      Julie Van Nostern, Chief Tax Attorney
and Tax Collector of the City and County        James M. Emery, Deputy City Attorney
of San Francisco:                               Andrew N. Shen, Deputy City Attorney
                                                CITY AND COUNTY OF SAN
                                                FRANCISCO


*Coblentz, Patch, Duffy & Bass v. City and County of San Francisco et al.*, A135509